IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN TERAI MAYFIELD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) <br> ) | No. 17 C 2919 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Bryan Terai Mayfield's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff is proceeding *pro se*. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment[2] [Doc. No. 17] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).
[2] Plaintiff's brief is titled "Opening Brief;" however, it will be construed as a motion for summary judgment.

# BACKGROUND

I. **PROCEDURAL HISTORY**

Plaintiff filed his claim for SSI on October 24, 2011, alleging disability since February 15, 2008. (R. 301–06.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 4, 2014, 2015. (R. 37–94.) Plaintiff personally appeared and testified at the hearing and was represented by counsel. (*Id.*) Medical expert Allen W. Heinemann, Ph.D. and vocational expert Craig Johnston also testified. (*Id.*)

On March 14, 2014, the ALJ denied Plaintiff's claim for SSI, finding him not disabled under the Social Security Act. (R. 152–166.) On June 3, 2015, the Appeals Council vacated the hearing decision and remanded the case to an ALJ. (R. 167–72.) The Appeals Council gave the ALJ the following instructions on remand: obtain additional evidence concerning Plaintiff's mental impairments; obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's mental impairment; further evaluate Plaintiff's mental impairment in accordance with 20 CFR 416.920a; give further consideration to Plaintiff's maximum residual functional capacity during the relevant period and provide references to the record in support of assessed limitations; and evaluate the treating source opinion and explain the weight given to the evidence. (R. 170.)

A second hearing was held on January 11, 2016. (R. 95–149.) Plaintiff personally appeared and testified at the hearing and was represented by counsel.

(*Id.*) Plaintiff's fiancée, Nicole Howlett, medical expert Allen Heinemann, Ph.D., and vocational expert, Caroline Ward-Kanize, also testified. (*Id.*)

On February 2, 2016, the ALJ denied Plaintiff's claim for SSI, finding him not disabled under the Social Security Act. (R. 9–36.) The ALJ then proceeded through the five-step sequential evaluation process required by the Social Security Regulations. See 20 C.F.R. § 404.1520 and 416.902(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 24, 2011, the application date. (R. 14.) At step two, the ALJ determined that Plaintiff had the following severe impairments: learning disability, borderline intellectual functioning, attention deficit/hyperactivity disorder (ADHD), and major depressive disorder. (R. 15.) The ALJ found that Plaintiff's chronic kidney disease was a non-severe impairment. The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (*Id.*) *See* C.F.R. Part 404, Subpt. P, App. 1 416.920(d), 416.925, and 416.926. (*Id.*)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Plaintiff can perform simple, repetitive and routine work tasks, with routine changes and oral instructions only. He can have occasional contact with the general public; and is limited to jobs that are not fast-paced, do not have high production quotas, and require little independent judgment. (R. 20.) At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (R. 28.) At step five, based on Plaintiff's age, education, work

experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including hand packager, warehouse worker, and inspector. (R. 28–29.) Because of this determination, the ALJ found that Plaintiff was not disabled. (R. 29.)

The Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); (R. 1–6.).

## **DISCUSSION**

### I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

As an initial matter, Plaintiff's *pro se* brief includes multiple exhibits, the majority of which are already in the record. Plaintiff attaches three documents, however, that are not in the record. The Social Security Act does not allow the Court to review evidence that was not made available to the ALJ. *See* U.S.C. 405 § 205(g). Plaintiff's brief is limited to three pages of statements. The Court construes these statements as three arguments: (1) a remand is necessary to consider treating psychiatrist Dr. Robert Grunsten, M.D.'s opinion statement from May of 2016 as new and material evidence; (2) the ALJ erred in discrediting Plaintiff's credibility with regard to his activities of daily living ("ADLs"); and (3) the ALJ did not properly consider Plaintiff's IQ scores and alleged illiteracy in determining Plaintiff's RFC. For the reasons that follow, the Court affirms the ALJ's decision.

**A. New and Material Evidence Before the Appeals Council**

Plaintiff contends Dr. Grunsten's most recent opinion statement corroborates his assertion that he is unable to function productively due to his severe mental impairments. *Pl.'s Br.* at ¶B. Dr. Grunsten completed Mental Health Impairment Forms in May and June of 2016 for the Appeals Council. (R. 701–706.) In May 2016, Dr. Grunsten listed Plaintiff's diagnoses, and opined that he was "completely disabled from being able to work on an indefinite basis." (*Id.*) He further listed Plaintiff's attention deficit disorder as "disabling." (*Id.*) Dr. Grunsten also opined that Plaintiff could participate in activities/work for zero hours a day, and that his stage three kidney failure would limit him physically. (*Id.*) In order to corroborate

7

these findings, Dr. Grunsten pointed the Appeals Council to old records which also indicated limited cognitive function. (*Id.*)

In June 2016, Dr. Grunsten assigned Plaintiff a GAF[3] score of 48, found that Plaintiff would be unable to meet competitive standards in twenty-one of twenty-six mental abilities and aptitudes, and opined that Plaintiff has a low IQ. (*Id.*) Dr. Grunsten did not, however, reference specific test results in support of this finding, and simply stated that "patient has documentation." (*Id.*) Dr. Grunsten further opined that Plaintiff would be absent from work more than four days per month, that he read at a third-grade level, and that he could not manage benefits in his own best interest. (*Id.*)

The Court may review Dr. Grunsten's new opinion only if the Appeals Council found it to be "new and material" and evaluated the evidence, or if the Appeals Council rejected the evidence as not qualifying under the "new and material" standard. *See* 20 C.F.R. § 404.970; *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2016.) ("If the Council determined [the plaintiff's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence 'non-qualifying under the regulation,' we retain jurisdiction to review that

---

[3] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

8

conclusion for legal error".) Here, the Appeals Council stated that it considered "the additional evidence listed" and "found this information does not provide a basis for changing the Administrative Law Judge's Decision." (R. 2.) The Seventh Circuit has held that this language is insufficient to show that the Appeals Counsel considered the evidence. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (finding similar language was not specific enough to confirm that the Appeals Council had reviewed and accepted the new evidence.) Instead, such boilerplate language is considered a rejection of the evidence as not meeting the "new and material" standard required by the regulation. *Id.* ("We thus interpret the Appeals Council decision as stating that it has rejected [a claimant's] new evidence as non-qualifying under the regulation.") Therefore, the Court will review the evidence *de novo* to determine whether Dr. Grunsten's opinion qualifies as "new and material" evidence.

Dr. Grunsten's opinion is dated both May 24, 2016, and June 20, 2016. (R. 704, 706.) Both dates occur after the ALJ's written decision in January of 2016. The opinion is undeniably "new" as defined by the regulation. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (records are "new" if they were "not in existence or available to the claimant at the time of the administrative proceeding.") (citation and internal quotation marks omitted). The real question is whether the evidence qualifies as "material." For evidence to qualify as "material" under §404.970, it must create a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725, citing *Perkins*, 107 F.3d at 1296 (citation and internal quotation marks omitted).

9

Dr. Grunsten made several statements regarding Plaintiff's ability to work. (R. 705.) He opined that Plaintiff "is completely disabled from being able to work on an indefinite basis" and had "disabling attention deficit disorder." (*Id.*) Such statements are not medical opinions, but are findings reserved for the Commissioner. *Loveless v. Colvin* 810 F.3d 502, 507 (7th Cir. 2016). The Court is not obligated to credit Dr. Grunsten's assertion that Plaintiff is disabled or incapable of working. "[A] claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

Dr. Grunsten's new opinion also includes a GAF score of 48. (R. 701.) The ALJ discussed GAF scores in her determination and stated GAF scores are subjective and not dispositive for Social Security Disability purposes. (R. 26.) The ALJ dismissed other GAF scores in her determination, finding that the three factors used to determine a score can vary independently over time, and the assessment itself lacks standardization. (*Id.*) Therefore, the new GAF score does not create a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered. Dr. Grunsten also continues to point to old documentation to back up his claim that Plaintiff has a low IQ and limited cognitive functioning. (R. 701–706.) Dr. Grunsten checks off multiple boxes opining that Plaintiff would be unable to meet competitive standards in a work environment (*Id.*) However, as ALJ states in her decision, Dr. Grunsten's own treatment notes contradict his opinions. (R. 26–27.) His treatment notes indicate that Plaintiff was

10

well oriented, logical, coherent, had goal directed speech, appropriate affect, good mood, and was able to maintain attention and make good eye contact. (R. 677, 682, 686, 688.) To corroborate his new opinion, he states that "[p]atient has documentation," and to "see old records referring to patient's limited cognitive function." The ALJ had these records and documentation at the time of her determination, and therefore this new opinion evidence would not have altered her decision. Dr. Grunsten's new opinion consists of conclusory language, a GAF score, and a few checked boxes regarding Plaintiff's mental abilities and aptitudes. There is no information within Dr. Grunsten's new opinion that creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.

**B. Credibility**

Plaintiff argues that the ALJ improperly assessed his credibility with regards to his ADLs.[4] The reviewing court grants the ALJ substantial deference in her credibility determination unless it is "patently wrong" and not supported by the

---

[4] In 2016, the Commissioner rescinded SSR 96-7p, 1996 SSR LEXIS 4 and issued SSR 16-3p, 2016 SSR LEXIS 4, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued her opinion on February 2, 2016. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p, 1996 SSR LEXIS 4. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

11

record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder*, 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence de novo but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *4 (S.S.A. 1996). An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Plaintiff alleges that his fiancée assists him with all aspect of activities of daily living except for bathing and dressing himself. The ALJ, however, found that Plaintiff had only a moderate restriction in activities of daily living. (R. 18.) Although the ALJ noted that both Plaintiff and his fiancée testified as to significant limitations, the ALJ also looked to other portions of Plaintiff's testimony and evidence and found it contradictory. (*Id.*) For instance, Plaintiff's fiancée testified that he can do nothing without assistance and requiring reminders to brush his teeth and change his clothes. (R. 125–26.) Plaintiff testified, however, that he can

dress his children and occasionally bathe them, and that he bathes and dresses himself and can cut the lawn. (R. 108, 109–10, 114.)

Moreover, Plaintiff indicated to Dr. Gregory C. Rudolph, Ph.D., that he was capable of taking care of his basic needs, including dressing, grooming, and personal hygiene. (R. 564.) The ALJ also noted Plaintiff reported that he was unable to cook, but this was contradicted by his education, work history, and resume. (R. 16, 464–65.) His resume indicates that Plaintiff attended a Culinary Arts school and worked at Buffalo Wild Wings as a cook. (R. 16) The ALJ also noted that Plaintiff has an extensive job history, and although the jobs are relatively short in duration, all include job skills that contradict Plaintiff's claims of being incapable of functioning on his own. (*Id.*) For instance, Plaintiff asserted he was capable of managing multiple tasks from start to finish in a timely fashion, was dependable, and could work cooperatively with team members. (*Id.*) Plaintiff also listed experience with operating machinery, preparing menu times at a restaurant, and working on an assembly line. (*Id.*)

The ALJ also stated that the only evidence that corroborated Plaintiff's claims of an inability to function was the testimony of his fiancée. (R. 18.) The ALJ gave the fiancée's testimony little weight, as there is no evidence linking claims of an inability to function with his intellectual functioning or intellectual testing. (*Id.*) Moreover, Plaintiff's fiancée is not a disinterested party, and there were multiple adults living with Plaintiff at the time, and Plaintiff's help may not be needed around the house. (*Id.*) The ALJ was not "patently" wrong in her determination of

13

Plaintiff's credibility with respect to his ADLs. The ALJ gave reasons for her assessment, and she used the record evidence to build a logical bridge to her conclusion that Plaintiff is only moderately restricted in activities of daily living.

**C. RFC**

Finally, Plaintiff argues that the ALJ failed to accommodate for his low IQ score, his illiteracy, and his limitations in functioning when making her RFC determination. *Pl.'s Br.* at ¶G. Plaintiff contends that his IQ is in the forties, that he is illiterate, and that his impairments are managed by, but not improved on, medication. The ALJ has explained her reasoning for discrediting certain IQ scores, claims of illiteracy, and extreme limitations in functioning. The ALJ noted that the two physicians who found Plaintiff to have a lower IQ score, Dr. Laura Pyter, Psy.D. and Dr. Rudolph, both acknowledged that Plaintiff's scores were adversely affected by outside factors. (R. 21–22, 24–25, 665, 672.) Both doctors noted that the cognitive scoring was invalid. (*Id.*) Plaintiff's assertion that his IQ is in the forties and the other statements in his brief that contradict the ALJ's findings appear to ask the Court to reweigh the evidence. Plaintiff's statements contend that the ALJ did not properly weigh the evidence regarding his IQ and his RFC. However, it is not the job of the courts to reevaluate facts, reweigh evidence, or decide questions of credibility. *Skinner,* 478 F.3d at 841. A reviewing court may not substitute its own judgment for that of the Commissioner. *Id.*; *see also Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds differ over whether the applicant

is disabled, we must uphold the decision under review."). Plaintiff has not identified any legal argument for why the ALJ was incorrect in her treatment of the evidence, nor can this Court find a legal argument within the language of Plaintiff's allegations. The Court may not reweigh the evidence, and the ALJ's decision is affirmed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 17] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted. Affirmed.

**SO ORDERED.**                  **ENTERED:**

*Maria Valdez*

**DATE:   August 24, 2018**

                                              **HON. MARIA VALDEZ**
                                              **United States Magistrate Judge**